No. 12-16373

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

———————————————

In re: APPLICATION FOR EXEMPTION FROM ELECTRONIC PUBLIC

ACCESS FEES BY JENNIFER GOLLAN AND SHANE SHIFFLETT,


JENNIFER GOLLAN; SHANE SHIFFLETT,

Applicants-Appellants.

———————————————

On Appeal from the United States District Court
for the Northern District of California
D.C. No. 3:12-mc-80113-JW
(Honorable James Ware)

———————————————

**APPLICANT-APPELLANTS JENNIFER GOLLAN AND
SHANE SHIFFLETT'S OPENING BRIEF ON THE MERITS**

———————————————

THOMAS R. BURKE (SB# 141930)
  thomasburke@dwt.com
ROCHELLE L. WILCOX (SB# 197790)
  rochellewilcox@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599

JUDY ALEXANDER (SB# 116515)
  jalexander@judyalexander.com
2302 Bobcat Trail
Soquel, CA 95073
Telephone:  (831) 462-1692

Attorneys for Applicants-Appellants
JENNIFER GOLLAN and SHANE SHIFFLETT

# TABLE OF CONTENTS

Page

1. STATEMENT OF JURISDICTION ...............................................................1

2. ISSUE PRESENTED FOR REVIEW ............................................................1

3. STATEMENT OF THE CASE .......................................................................1

4. STATEMENT OF FACTS .............................................................................2

5. PROCEDURAL HISTORY ...........................................................................7

6. STANDARD OF REVIEW ..........................................................................11

7. SUMMARY OF ARGUMENT .....................................................................11

8. ARGUMENT ..............................................................................................12

9. CONCLUSION ...........................................................................................19

i

# TABLE OF AUTHORITIES

Page

CASES

*Arkansas Writers' Project, Inc. v. Ragland*,
 481 U.S. 221 (1987)..........................................................................16

*Doe v. Rumsfeld*,
 435 F.3d 980 (9th Cir. 2006) ...........................................................11

*J-R Distributors, Inc. v. Eikenberry*,
 725 F.2d 482 (9th Cir. 1984), *overruled on other grounds, Brockett v.*
 *Spokane Arcades, Inc.*, 472 U.S. 491 (1985)....................................16

*Lively v. Wild Oats Markets, Inc.*,
 456 F.3d 933 (9th Cir. 2006) ...........................................................11

*Lonberg v. Sanborn Theaters Inc.*,
 259 F.3d 1029 (9th Cir. 2001) .........................................................15

*Malcom v. Payne*,
 281 F.3d 951 (9th Cir. 2002) ...........................................................15

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*,
 460 U.S. 575 (1983)..........................................................................15

*San Luis & Delta-Mendota Water Auth. v. United States*,
 672 F.3d 676 (9th Cir. 2012) ...........................................................11

*The Ecology Center v. Castaneda*,
 426 F.3d 1144 (9th Cir. 2005) .........................................................11

STATUTES

28 U.S.C. § 1295.......................................................................................1

28 U.S.C. § 1331.......................................................................................1

28 U.S.C. § 1914.......................................................................................1

28 U.S.C. § 1914(b) ................................................................................12

## CONSTITUTIONAL PROVISIONS

United States Constitution, First Amendment ........................................................16

## OTHER AUTHORITIES

*About CIR*, available at http://cironline.org/about-cir. ...............................................3

Electronic Public Access Fee Schedule, available at
http://www.pacer.gov/documents/epa_feesched.pdf. ........................................13

http://www.kqed.org/news/bayarea/onshakyground/ .................................................5

http://www.liu.edu/About/News/Univ-Ctr-PR/2012/February/Polk-PR_Feb-
20-2012.aspx..........................................................................................................4

http://www.macfound.org/press/press-releases/macarthur-foundation-
announces-2012-winners-award-creative-and-effective-nonprofits/. ..................4

http://www.pulitzer.org/finalists/2012.........................................................................5

http://www.scripps.com/foundation/news/releases/12march16.html .......................4

https://ire.org/awards/ire-awards/winners/2011-ire-awards-winners/......................5

Letter from Sen. Lieberman to Sen. Richard Durbin, Chairman,
Subcommittee on Financial Services and General Government,
Committee on Appropriations, available at
http://www.hsgac.senate.gov/media/majority-media/lieberman-details-
government-management-needs. ............................................................................8

Schultze, "What Does It Cost to Provide Electronic Public Access to Court
Records?," available at
http://managingmiracles.blogspot.com/2010/05/what-is-electronic-
public-access-to.html .........................................................................................17

Yu & Schultze, "Using Software to Liberate U.S. Case Law," available at
https://www.recapthelaw.org/2012/01/10/recap-featured-in-xrds-
magazine/ ..............................................................................................................8

DWT 20541368v2 0200236-000002

## 1.  STATEMENT OF JURISDICTION

The district court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including 28 U.S.C. § 1914 and the acts of the Judicial Conference in implementing that statute. This Court has jurisdiction over this appeal under 28 U.S.C. § 1295 because the decision below is a final decision as to the rights of Applicants-Appellants Jennifer Gollan and Shane Shifflett (collectively, "Appellants") and Appellants have no other effective means of appeal.

## 2.  ISSUE PRESENTED FOR REVIEW

Did the district court err when it interpreted the Judicial Conference Policy Notes to the Electronic Public Access Fee Schedule as prohibiting courts from granting a temporary exemption from PACER fees to any journalists, even journalists performing their research on behalf of a 501(c)(3) non-profit who requested access for the sole purpose of research to educate the public on issues of profound public importance, with no profit motive?

## 3.  STATEMENT OF THE CASE

Jennifer Gollan and Shane Shifflett are reporters with the Center for Investigative Reporting ("CIR"), an educational and charitable section 501(c)(3) nonprofit organization in California dedicated to public education and engagement through investigative and enterprise reporting.  After requesting and receiving a temporary exemption from PACER fees to research issues related to the

1

effectiveness of the Court's conflicts system, the district court in the Northern District of California withdrew that exemption. Based exclusively on its interpretation of the Judicial Council Policy Notes to the Electronic Public Access Fee Schedule, the court concluded that it was precluded from granting a fee waiver to a member of the media, even if that media member was acting on behalf of a 501(c)(3) corporation. Appellants contend that the district court misinterpreted the Judicial Council Policy Notes in withdrawing the fee waiver it previously had granted to them.

## 4. STATEMENT OF FACTS

CIR was granted section 501(c)(3) tax exempt status in 1978 because it was organized and has always been operated for educational and charitable purposes. Excerpts of Record ("E.R.") 018. CIR achieves those purposes primarily, but not exclusively, through the vehicle of journalism. *Id.* CIR's Articles of Incorporation explain its *raison d'etre*:

> The specific and primary purposes of this corporation are to engage in charitable and educational activities . . . including but not limited to the following activities:
>
> 1) To conduct research on important contemporary social, political, and economic issues and to use on-line and traditional media forms to disseminate results obtained through the production of news articles and other printed materials to further public knowledge and understanding of these important issues;

> 2)     To educate the general public and promote free speech and democracy through the publication of high quality, non-partisan journalism . . .."

*Id.*

CIR's website emphasizes the difference between it and for-profit media organizations:

> In today's media landscape, many news organizations no longer report – they merely repost.  The Center for Investigative Reporting (CIR) is different.  We arm the public with thoroughly reported stories that offer deep explanations of complex issues – from the environment to immigration, government accountability, education, health, campaign finance and more.  And we cover those stories locally, nationally and internationally.  Founded in 1977, CIR is the nation's oldest nonprofit investigative reporting organization – producing multimedia reporting that enables people to demand accountability from government, corporations and others in power.

*About CIR*, available at http://cironline.org/about-cir.  CIR's website goes on to explain that it is "committed to 'story before glory,'" and therefore works collaboratively with other news organizations to develop stories.  *Id.*  Thus, for example, CIR "partnered with NPR for an investigation into intelligence gathering 10 years after the 9/11 attacks."  *Id.*  Similarly, "California Watch is leading a collaboration of 12 media outlets to report on a proposed $98 billion high-speed rail system, which would be the most expensive public works project in the state's history."  *Id.*

CIR's reporting has resulted in a number of journalism awards including, in the last year alone:

3

- CIR received a MacArthur Award for Creative and Effective Institutions (one of only 15 awarded that year), for its "groundbreaking nonprofit investigative journalism." *See* http://www.macfound.org/press/press-releases/macarthur-foundation-announces-2012-winners-award-creative-and-effective-nonprofits/.

- CIR received a Long Island University George Polk Award for the California Watch series, "Decoding Prime," a groundbreaking, yearlong series of articles demonstrating how a California hospital chain increased its Medicare reimbursements by classifying patients as suffering from rare medical conditions. *See* http://www.liu.edu/About/News/Univ-Ctr-PR/2012/February/Polk-PR_Feb-20-2012.aspx.[1]

- CIR received a Scripps Howard Award for public service, an IRE medal for outstanding investigative work, and was a Pulitzer finalist in the local reporting category, all for the California Watch series "On Shaky Ground." *See* http://www.scripps.com/foundation/news/releases/12march16.html;

---

[1] The announcement explained that "[t]he stories, which appeared in newspapers across California, offered a glimpse into the broader problem of waste, fraud and abuse within the nation's $2.5-trillion health care system. The reporters sorted through more than 2,500 pages of legal filings and – using an ambitious computer-assisted data program – examined more than 51 million patient records of hospital and emergency room visits. In the wake of the series, Congress and the California State Assembly called for deeper investigations into fraud and malfeasance." *Id.*

4

https://ire.org/awards/ire-awards/winners/2011-ire-awards-winners/;

http://www.pulitzer.org/finalists/2012.

"On Shaky Ground" illustrates the breadth of CIR's educational activities. E.R. 018-019; *see* http://www.kqed.org/news/bayarea/onshakyground/.  In 2009 a CIR reporter was given a simple assignment to write about seismic safety at California schools keyed to the 20th anniversary of the Loma Prieta earthquake. E.R. 018.  However, reporter Corey Johnson discovered a staggering regulatory failure – thousands of school buildings were occupied even though they did not meet seismic safety standards.  *Id.*  Bad inspectors missed major defects or falsified reports, while being rewarded with more work.  *Id.*  And the state made it practically impossible for schools to get access to available seismic repair money. *Id.*  The original "simple assignment" turned into a nineteen month investigation. *Id.*

CIR distributed in early April 2011 the original three-part "On Shaky Ground" series to every major media market in the state, from California's largest daily newspapers to television, radio, and the web.  E.R. 018-019.  The stories were translated into Spanish, Korean, Chinese and Vietnamese and distributed by the ethnic media.  E.R. 019.  Based on circulation numbers and TV and radio audience size, "On Shaky Ground" reached more than 7 million people over the

5

course of three days. *Id.* Key follow-up stories were distributed throughout the remainder of 2011. *Id.*

However, CIR did not stop there. *Id.* It went to great lengths to engage the public and raise awareness about the importance of earthquake preparedness. *Id.* For young school children, CIR created and produced an earthquake safety coloring book in five languages and distributed more than 36,000 copies at no charge to schools. *Id.* For parents, it compiled an interactive database featuring every public K-12 school in the state, allowing parents to see if their child attends a school near faults or with seismically unsafe buildings. *Id.* CIR assembled safety packets with whistles and ID cards and handed them out at community events throughout the state. *Id.* It also built an iPhone app enabling users to pinpoint quake faults near them. *Id.* The app also includes earthquake preparation checklists and a flashlight.

The positive impact of "On Shaky Ground" has been enormous:

- Shortly after the initial stories were distributed, legislators voted to audit the office that oversees public school construction in California.

- Regulators vowed to adopt every safety recommendation in the audit report.

- New state standards were created making it possible for schools with known seismic hazards to tap into a $200 million repair fund.

6

- A series of policy changes ensured more safety oversight of school project and created more accountability measures for safety inspectors.

- Some school officials took matters into their own hands.  Superintendents shut down buildings after learning about potential dangers as a result of the series.

E.R. 019.  CIR's comprehensive educational efforts are what support its status as a section 501(c)(3) nonprofit organization.

## 5.  PROCEDURAL HISTORY

On March 19, 2012, Gollan and Shifflett, then reporters for The Bay Citizen, submitted an application for exemption from the fees imposed for public access to the PACER system, limited to their work on a specific project and also limited in time.  E.R. 046-049.  Gollan and Shifflett advised the court that The Bay Citizen is "a charitable and educational 501(c)(3) nonprofit organization in California that is dedicated to informing and engaging the public with incisive research."  E.R. 046.  Their application explained:

> Jennifer Gollan and Shane Shifflett of The Bay Citizen intend to conduct original and comprehensive empirical research by analyzing the effectiveness of the court's conflict-checking software and hardware to help federal judges identify situations requiring their recusal.  We propose to cross reference court records available through PACER against separate data sets, such as judges' statements of economic interest.  By harvesting dockets from PACER and analyzing their grammatical patterns, we intend to design processes that classify documents and search them for context.  This project

7

would involve accessing PACER records in the Northern District of California.

E.R. 047. It continued that the fee waiver was necessary because The Bay Citizen

has limited funding and is wholly dependent on donations, and therefore without a

waiver, Gollan and Shifflett would be unable to do the research. *Id.*[2] It stated that

the reporting they intended to conduct would be available on The Bay Citizen's

website, which would "increase the public's understanding of the federal judiciary

and its commitment to accountability," thereby increasing "the public's trust in the

legal system by providing greater transparency into the recusal process arising

from financial conflicts of interest." E.R. 048. They requested a temporary fee

waiver, lasting only a few months, which they believed would be adequate for

them to harvest the data they needed to conduct their analysis. E.R. 046-047.

---

[2] As one commentator pointed out, court documents are only available through PACER. Yu & Schultze, "Using Software to Liberate U.S. Case Law," available at https://www.recapthelaw.org/2012/01/10/recap-featured-in-xrds-magazine/. Thus, "[a]cademics who want to study large quantities of court documents are effectively shut out. Also affected are journalists, non-profit groups, and other interested citizens, whose limited budgets make paying for PACER access an unfair burden." *Id.* In his March 25, 2010 letter to the Senate Appropriations Committee addressing funding needs for 2011, Homeland Security and Governmental Affairs Chairman Joe Lieberman expressed his concern about public access. Letter from Sen. Lieberman to Sen. Richard Durbin, Chairman, Subcommittee on Financial Services and General Government, Committee on Appropriations, available at http://www.hsgac.senate.gov/media/majority-media/lieberman-details-government-management-needs. Sen. Lieberman recommended changes that "could allow for free bulk access to raw data that would allow increased analytical and oversight capability by third parties." *Id.*

8

The Court granted their application on March 21, 2012. E.R. 040-045. Shortly later (at some point before April 10, 2012), the Court realized that Gollan and Shifflett may be "members of the media," which the Court stated may render them ineligible for a PACER fee exemption under the Policy Notes to the Fee Schedule. E.R. 037. The Court scheduled a hearing for April 30, 2012 to address this issue. *Id.*

Effective on the date of the hearing The Bay Citizen merged with and into the Center for Investigative Reporting ("CIR"), and Gollan and Shifflett became employees of CIR. E.R. 027. Thus, counsel for CIR and Gollan and Shifflett appeared at the hearing. *Id.* The Court explained that it had not initially focused on the fact that Gollan and Shifflett might fairly be classified as members of the media. E.R. 028. It continued:

> And once my attention was drawn to – that the exemption – it's a policy kind of an exemption that is established by the administrative office of the court, is that PACER exemptions not be granted to the media, because you can understand, quite frankly, there are lots of media that would wish to cover the court in various ways. So as not to discriminate among them, 501(c)(3) or otherwise, the guidance that we were given was to not exempt the media as a class.

E.R. 028-029. After Appellants' counsel pointed out that the 501(c)(3) status focuses on the charitable purposes of the organization, and not whether the organization is a media entity (E.R. at 029-031), the court responded, "that poses perhaps a dilemma for the court in following the policy, because I'm directed that

the exemption should not be granted to media ordinarily" (E.R. 032). The court explained that it intended to reconsider the application with the understanding that Gollan and Shifflett "are members of the media." *Id.* The court ordered an immediate suspension of the exemption, although it recognized the importance of the work being done by Appellants. E.R. 033-034. That day, the Court issued an order revoking the fee waiver previously granted to Gollan and Shifflett and permitting them to file a renewed application. E.R. 023-024.

Gollan and Shifflett filed their renewed Application on May 8, 2012. E.R. 015-022. In it, they reiterated their reason for conducting the research they intended (repeating what they had stated in their initial application). E.R 017. They explained CIR's mission and discussed some of the reporting and related work it had conducted in recent years. E.R. 018-019. After analyzing the Fee Schedule and Policy Notes, they committed to abide by the Court's requirements for a fee waiver,[3] and asked the court to reinstate the waiver. E.R. 020. The Court

---

[3] The district court did not dispute Appellants' commitment to comply with the requirements established by the Judicial Council. As required by the PACER Fee Schedule, Gollan and Shifflett assured the court that "CIR and its reporters understand and agree that the fee exemption (i) will apply only apply [sic] to Gollan and Shifflett, (ii) will be valid only for the research study described above, and (iii) will apply only to the electronic case files of this court that are available through PACER. While the research study may yield published reports, CIR and its reporters agree not to use the raw data obtained through the fee exemption for commercial purposes or Internet redistribution, and not to transfer any of the data unless authorized by the Court." E.R. 020.

10

refused, issuing its order on May 16, 2012, denying the requested fee waiver.  E.R. 011-013.  This timely appeal followed.  E.R. 001-010.

## 6.  STANDARD OF REVIEW

This case addresses the question of whether the district court properly interpreted the Electronic Public Access Fee Schedule promulgated by the Judicial Counsel (the "Fee Schedule") and the related Judicial Conference Policy Notes (the "Policy Notes").  The district court's interpretation and construction of federal law are questions of law reviewed *de novo.  See*, *e.g.*, *San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 699 (9th Cir. 2012); *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 938 (9th Cir. 2006).  In addition, the constitutionality of a federal statute is reviewed *de novo.  See Doe v. Rumsfeld*, 435 F.3d 980, 984 (9th Cir. 2006); *The Ecology Center v. Castaneda*, 426 F.3d 1144, 1147 (9th Cir. 2005) (Flathead and Kootenai National Forest Rehabilitation Act).  This Court should review *de novo* the trial court's ruling because it is based exclusively on the court's interpretation of the Fee Schedule and Policy Notes and all relevant facts are undisputed.

## 7.  SUMMARY OF ARGUMENT

This case presents a single discrete issue:  Did the district court err when it interpreted the Judicial Council Policy Notes to hold that no members of the press can receive a benefit (a fee waiver) that is available to all other qualified citizens,

11

where the benefit is denied to the press solely because they are members of the press? As explained below, the answer can only be that the Court erred.

On *de novo* review, this Court should reverse the district court's interpretation of the Judicial Council Policy Notes and reinstate the PACER fee waiver that the Court previously had granted to Appellants. The court misinterpreted the Policy Notes, which only prohibit fee waivers for members of the media if they are ***not*** one of the groups identified in the Fee Schedule (including 501(c)(3) organizations). Because CIR is a 501(c)(3) organization, it is eligible for the fee waiver.

Moreover, the fee waiver is fundamentally important here. Gollan and Shifflett hope to conduct an *independent* review and analysis of the effectiveness of this Court's conflict system – an analysis that indisputably will contribute to the transparency that is a fundamental goal of the Court. The interpretation adopted by the district court, which denies a valuable benefit to CIR solely because it is a member of the media, will frustrate the transparency in court proceedings that this Court consistently has embraced. It should be reversed.

## 8. ARGUMENT

28 U.S.C. § 1914(b) authorizes the district courts to collect such fees "as are prescribed by the Judicial Conference of the United States." Pursuant to this

authority, the Judicial Conference has adopted the Fee Schedule, governing access

to documents through the PACER system. That Fee Schedule provides in part:

> Consistent with Judicial Conference policy, ***courts may, upon a
> showing of cause, exempt*** indigents, bankruptcy case trustees,
> individual researchers associated with educational institutions, courts,
> ***section 501(c)(3) not-for-profit organizations***, court appointed pro
> bono attorneys, and pro bono ADR neutrals ***from payment of these
> fees***. Courts must find that parties from the classes of persons or
> entities listed above seeking exemption have demonstrated that an
> exemption is necessary in order to avoid unreasonable burdens and to
> promote public access to information. For individual researchers,
> courts must also find that the defined research project is intended for
> academic research, and not for commercial purposes or internet
> redistribution. Any user granted an exemption agrees not to sell for
> profit the data obtained as a result.

E.R. 022 (emphasis added); *see* Electronic Public Access Fee Schedule, available

at http://www.pacer.gov/documents/epa_feesched.pdf.

As shown, the Fee Schedule authorizes exemptions from fees for access to

the PACER database, upon a showing of cause, for section 501(c)(3) not-for-profit

organizations, among others. There is no dispute – and the district court agreed –

that because CIR has been classified by the IRS as a section 501(c)(3) not-for-

profit organization since May 1978, it is part of a group eligible for exemption

from PACER fees under the plain language of the Fee Schedule. E.R. 027-029,

040-042.

However, the Judicial Council also clarified the authority of the district

courts to grant a fee waiver. Its Policy Notes addressing this issue state in part:

13

> Courts should not exempt local, state or federal government agencies, members of the media, attorneys or others not members of one of the groups listed above.

E.R. 022, Judicial Council Policy Notes. The district court concluded that under the Policy Notes, the court is ***required*** to deny a fee waiver exemption to all members of the media, and thus that the court had no discretion to permit a fee waiver to Appellants. E.R. 029. But the court erred in its interpretation of the Policy Notes.

A careful analysis of the language of the Policy Notes makes clear that it is not intended to exempt ***all*** members of the media from the PACER fee waiver provisions. Instead, the Notes make clear that only those members of the media that are for-profit organizations are ineligible for the fee waiver. The Policy Notes state that the court should not exempt "members of the media … or others not members of one of the groups listed above." E.R. 022. Thus, the Policy Notes assume that the "members of the media" referenced in the Policy Notes are "not members of one of the groups listed above," *i.e.,* not 501(c)(3) organizations or otherwise eligible for an exemption. "Members of the media" is offered as an example of one of the entities that may not receive a fee waiver, because members of the media – typically – are not members of one of the groups entitled to a fee waiver.

The other example provided by the Judicial Conference makes this point more clearly. In addition to "members of the media," the Policy Notes direct courts to not grant PACER fee exemptions to attorneys. E.R. 022. Yet, this prohibition plainly does not apply to all attorneys because the Fee Schedule explicitly authorizes fee exemptions for court appointed *pro bono* attorneys. Thus, while the Policy Notes state that "attorneys" – without limitation or qualification – may not receive a fee waiver, the Fee Schedule itself establishes that this prohibition is qualified. *Some* attorneys – *pro bono* attorneys – are entitled to fee waivers. *Pro bono* attorneys are not part of the "others not members of one of the groups listed above" who are ineligible to receive a fee waiver.

The reference to "members of the media" in the Policy Notes should receive a parallel interpretation. *Malcom v. Payne*, 281 F.3d 951, 958 & n.2 (9th Cir. 2002) (giving statutes parallel interpretation due to their similarities); *Lonberg v. Sanborn Theaters Inc.*, 259 F.3d 1029, 1035 (9th Cir. 2001) (giving statutes parallel interpretation in part because of problems that may flow out of alternative interpretation). Like "attorneys," "members of the media" is qualified, and encompasses only those members of the media that are ***not*** "one of the groups listed above." But CIR is "one of the groups listed above" – a 501(c)(3) organization. It will not profit from the research it intended to undertake. It is

15

eligible for a PACER fee waiver and should not be denied that benefit merely because it is – in addition to a 501(c)(3) organization – a press organization.

Any other interpretation would raise serious constitutional questions about the Fee Schedule and Policy Notes. Plainly, government cannot discriminate against the press by denying its members a benefit it affords to others. As the U.S. Supreme Court explained in *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983), "differential treatment [of the press], unless justified by some special characteristic of the press, suggests that the goal of the regulation is not unrelated to suppression of expression, and such a goal is presumptively unconstitutional." *Id.* at 585 (rejecting tax imposed only on newspapers).

This Court similarly has rejected a fine that was imposed based on the content of speech, finding that it was "unnecessary to the achievement of any legitimate state goal" and therefore that "the presumption of unconstitutionality cannot be rebutted here." *J-R Distributors, Inc. v. Eikenberry*, 725 F.2d 482, 495 (9th Cir. 1984), *overruled on other grounds, Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985). The Court explained that the state "could have achieved its legislative goals by more carefully tailored means that would be less restrictive of free expression." *Id.* (citation omitted).

16

The district court's interpretation of the Policy Notes does exactly what this Court and the Supreme Court have condemned.[4]  The district court found that Gollan and Shifflett were entitled to a fee waiver exemption, which it granted. E.R. 040-042.  It then withdrew that exemption *only* because the court became aware that Gollan and Shifflett were members of the media.  E.R. 011-012, 029, 037-038.  This overtly disparate treatment of a press organization is *a fortiori* unconstitutional.[5]

---

[4] Gollan and Shifflett do not suggest that the court had an improper motive, nor is it necessary for the Court to find one to reverse the district court's interpretation of the Policy Notes.  As the Supreme Court explained, "[i]llicit legislative intent is not the *sine qua non* of a violation of the First Amendment. … We have long recognized that even regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment."  *Id.* at 592 (citations omitted); *see also Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 228 (1987) (discriminatory treatment of the press "can be established even where, as here, there is no evidence of an improper censorial motive" (citation omitted)).

[5] There also is no question that the court will not be harmed by granting the exemption.  The district court made clear that Gollan and Shifflett's use of the fee waiver to access court records – while it was available to them – caused no technical interference to the PACER system.  E.R. 033.  Moreover, as one noted academic found, the courts receive a significant financial benefit from PACER fees – far more than their expenses associated with the PACER system.  *See* Schultze, "What Does It Cost to Provide Electronic Public Access to Court Records?," available at http://managingmiracles.blogspot.com/2010/05/what-is-electronic-public-access-to.html.  Thus, granting PACER fee waivers to those few members of the media who also are 501(c)(3) organizations would not impose an undue expense on the courts.

17

The district court's interpretation would frustrate a key goal of the fee exemption and of this Court – transparency in the court system – by denying the fee exemption to the very organizations that are most likely to provide the kind of careful analysis that most benefits the public. As CIR explains on its website, it is dedicated to in-depth investigation and reporting to facilitate public oversight of all levels of government (and others). This type of investigation is both fundamentally necessary and increasingly scarce, as for-profit media organizations cut costs in response to the challenges of a severe recession combined with a changing market.

Here, for example, Gollan and Shifflett hoped to conduct thorough, careful research, to evaluate the efficacy of the conflict system used in the district courts. E.R. 017. Nobody can deny the importance of this issue to the public, and to the judiciary as a whole. To perform this research, Gollan and Shifflett asked for – and initially received – a temporary fee waiver, allowing them unfettered access to the court's public records for a few months. E.R. 040-042. They received this exemption so that they could

> cross reference court records available through PACER against separate data sets, such as judges' statements of economic interest. By harvesting dockets from PACER and analyzing their grammatical patterns, we intend to design processes that classify documents and search them for context.

DWT 20541368v2 0200236-000002

E.R. 047.  They explained, however, that without the fee waiver, the project would require extensive PACER access "at an anticipated cost of many thousands of dollars."  *Id.*  Thus, they explained, because of their non-profit status, they will not be able to conduct the research they planned without a fee waiver.  *Id.*  In denying that fee waiver, and withdrawing the unfettered access that Gollan and Shifflett need to conduct their research, the transparency consistently embraced by this Court was thwarted.

Under the district court's interpretation, the very people who are most likely to conduct government oversight are at a disadvantage, and charged for the access that is free to others.  The skewed result is less information and analysis to the public at a time when they most need it.  As a non-profit organization, CIR is eligible for a fee waiver, as evidenced by the district court's initial grant of Gollan and Shifflett's application.  E.R. 040-042.  The court erred in interpreting the Policy Notes to deny them that benefit solely because they provide the public service of in-depth research and analysis to gather information for dissemination to the public.

## 9.  CONCLUSION

The district court's interpretation of the Policy Notes resulted in disparate treatment of Gollan and Shifflett because of their status as members of the press. The court erred in reading the Policy Notes as an absolute prohibition on fee

19

waivers for members of the press.  A more reasonable interpretation – one that protects public access while ensuring that organizations that can pay for access do so – is that members of the press may be exempted from PACER fees if they fall into one of the groups identified in the Fee Schedule.  Gollan and Shifflett, as employees of a 501(c)(3) organization, plainly were eligible for a waiver.  The court erred in withdrawing that waiver.

For the foregoing reasons, Gollan and Shifflett respectfully request that the Court reverse the order of the district court and hold that all non-profits, including members of the press, are eligible for a fee waiver under the Electronic Public Access Fee Schedule and Policy Notes.

RESPECTFULLY SUBMITTED this 22nd day of October, 2012.

LAW OFFICES OF JUDY ALEXANDER
JUDY ALEXANDER

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
ROCHELLE L. WILCOX


By  /s/  Thomas R. Burke
                    Thomas R. Burke

Attorneys for Applicants-Appellants
JENNIFER GOLLAN and SHANE SHIFFLETT

20

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the requirements of Circuit Rule 32. The brief is proportionately spaced in Times New Roman 14-point type. According to the word processing system used to prepare the brief, the word count of the brief is 4,611, not including the table of contents, table of citations, certificate of service, certificate of compliance, statement of related cases, or any addendum containing statutes, rules or regulations required for consideration of the brief.

RESPECTFULLY SUBMITTED this 22nd day of October, 2012.

LAW OFFICES OF JUDY ALEXANDER
JUDY ALEXANDER

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
ROCHELLE L. WILCOX


By */s/  Rochelle L. Wilcox*
          Rochelle L. Wilcox

Attorneys for Applicants-Appellants
JENNIFER GOLLAN and SHANE SHIFFLETT

DWT 20541368v2 0200236-000002

## <u>STATEMENT OF RELATED APPEALS</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellants-Applicants, Jennifer Gollan and Shane Shifflett, state that they are not aware of any related appeals pending in this Court.

RESPECTFULLY SUBMITTED this 22nd day of October, 2012.

LAW OFFICES OF JUDY ALEXANDER
JUDY ALEXANDER

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
ROCHELLE L. WILCOX


By  */s/  Thomas R. Burke*
        Thomas R. Burke

Attorneys for Applicants-Appellants
JENNIFER GOLLAN and SHANE SHIFFLETT

22

9th Circuit Case Number(s) | 12-16373

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > PDF Printer/Creator).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) October 22, 2012 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Judy Alexander
Law Offices of Judy Alexander
2302 Bobcat Trail
Soquel, CA 95073

Signature (use "s/" format) | /s/ Ellen Duncan